## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

John J. Gosselin

    v.                                        Civil No. 12-cv-514-SM

Christopher Kench et al.[1]

## REPORT AND RECOMMENDATION

Before the court is John J. Gosselin's original complaint and first and second amended complaints (doc. nos. 1, 5, and 7). This court construes those documents, in the aggregate, to be the complaint in this action for all purposes. The complaint asserts that defendants have violated Gosselin's federal constitutional rights, engaged in tortious conduct, and violated his state law rights to due process and humane treatment. The matter is before the court for preliminary review to determine if Gosselin has stated a claim upon which relief can be granted.

---

[1]Plaintiff names the following defendants: New Hampshire Department of Corrections ("DOC") Security and Training Director Christopher H. Kench; DOC Commissioner William L. Wrenn; DOC Classifications Officer Kimberly Lacasse; DOC Hearings Officer Ike Barton; New Hampshire State Prison ("NHSP") Warden Richard M. Gerry; NHSP Maj. Jonathan Fouts; NHSP Unit Manager Robert McGrath; NHSP Lt. James J. Brown; NHSP Sgt. Thomas Messina; NHSP Sgt. Bonnie Johnson; NHSP Corrections Officer Eric Turner; two unnamed NHSP Special Housing Unit officers identified as "Cpl. First Shift" and "OIC Third Shift"; NHSP Social Worker David Garbac; and NHSP inmate Ronald Clark.

See 28 U.S.C. § 1915A; United States District Court, District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Preliminary Review Standard

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se, in forma pauperis prisoner complaints before defendants have an opportunity to respond to the claims. The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se prisoner complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). To determine plausibility, the court treats as true all well-pleaded factual allegations, and construes all reasonable

2

inferences drawn therefrom in the plaintiff's favor.  See
Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir.
2011).

## Background

The complaint asserts claims relating to: inmate assaults
at the New Hampshire State Prison in Concord, New Hampshire
("NHSP-Concord") and the Northern New Hampshire Correctional
Facility in Berlin, New Hampshire ("NCF-Berlin"); disciplinary
proceedings that ensued after inmate Ronald Clark assaulted
Gosselin in December 2009; Gosselin's transfer to NCF-Berlin on
January 26, 2010; and the January 26, 2010, failure of
corrections officers to give Gosselin prescription medication
for his diagnosed mental health conditions.

Gosselin asserts that in 2003, state officials published
that he was a prison informant, and, in 2003-2004, a number of
inmates at NCF-Berlin threatened to kill him.  Gosselin further
asserts that state prison inmates have assaulted or killed other
inmates they consider "rats."[2]

Gosselin alleges that on December 25, 2009, inmate Ronald
Clark tried to tip over a table where Gosselin was sitting and
struck Gosselin in the head.  Gosselin alleges that he held

_____

[2]Any claims asserted arising out of events that occurred in
2003 and 2004 would be time-barred.

3

Clark off by the neck and broke his glasses, ending the fight. Gosselin claims that Clark attacked him because Gosselin told Clark he would tell inmate Sean Morris that Clark had announced that Corrections Officer ("C.O.") Turner said Morris "ratted . . . out" Clark's friend. Gosselin asserts that Clark was a prison informant who reported the incident to his "handler," C.O. Turner, who then charged Gosselin with a "felonious assault" on Clark. Gosselin spent a month in the NHSP-Concord Special Housing Unit ("SHU") pending disposition of disciplinary charges arising from that incident.

NHSP-Concord Lt. Brown investigated the December 25, 2009, incident, and, Gosselin asserts, within fourteen hours found that the assault charge was not supported by the evidence. Brown further concluded, however, that Gosselin had engaged in the disciplinary offense of "fighting," and Brown changed the assault charge to "fighting" and added a property damage disciplinary charge, as to the broken eyeglasses. Then, Gosselin asserts, Brown threatened Gosselin with unspecified sanctions for refusing to plead guilty and accepting Brown's offer of only ten days in segregation. Gosselin refused to accept Brown's conditions, maintaining his innocence, while admitting he held Clark off by the neck and broke Clark's glasses in self-defense. Gosselin filed an administrative

complaint on December 28, 2009, concerning the treatment he received from Brown and Turner, relating to the disciplinary charges.

At the January 19, 2010, disciplinary hearing on the fighting and property damage charges, DOC Hearings Officer Ike Barton found that Gosselin admitted he broke Clark's glasses, and found him guilty of damaging property. Barton ordered Gosselin to pay Clark restitution for the glasses. Gosselin was acquitted of the fighting charge, however, as Barton found that the charging officer had not shown that the confidential sources were reliable.

Gosselin alleges that while in SHU pending disposition of the December 2009 charges and thereafter, he filed numerous complaints and grievances, and demanded that he be returned to his cell in Medium Custody South at NHSP-Concord, for his safety. Prison officials, in general, either failed to respond to, or denied, those complaints and grievances in writing. In particular, Gosselin alleges that on January 22, 2010, he sent an inmate request slip to the "Director of Security and Training," Christopher Kench, stating that prison officials, by transferring him to SHU, had not protected him adequately from the risk of inmate violence, given that in 2003, he had been labeled an informant, and that in 2003-2004, a number of inmates

at NCF-Berlin had threatened his life. Gosselin further alleges that, upon learning about his imminent transfer to NCF-Berlin, Gosselin spoke to a SHU Corporal on January 25, 2010, regarding his fears about inmates at NCF-Berlin and his desire for protective custody, and that corporal indicated that Gosselin's request for protective custody review status would be filed. Additionally, on January 26, 2010, while awaiting the transfer to NCF-Berlin, Gosselin alleges Sgt. Johnson told him he could tell the officers at NCF-Berlin that he wanted protective custody, and "Counselor Matson . . . went to bat" for him by addressing concerns about the transfer to DOC Classifications Officer Kimberly Lacasse.

On January 27, 2010, the day after his transfer to NCF-Berlin, Gosselin alleges that unnamed NCF-Berlin inmates tried to kill him. He asserts that inmates struck him in the face, broke his nose, blackened his eyes, and loosened his teeth. After that incident, NCF-Berlin officials put Gosselin in protective custody ("PC") at that facility. During the month of February 2010, prison officials returned Gosselin to NHSP-Concord, granted him PC status, and reassigned him to a cell in Medium Custody South.

**Claims**

The court construes Gosselin's complaint (doc. nos. 1, 5 and 8) to assert the following claims:

1.    Defendants are liable under 42 U.S.C. § 1983 for violating Gosselin's rights under the Eighth Amendment, in that:
>    (a) Clark, acting as Turner's agent, struck Gosselin;
>    (b) defendants were deliberately indifferent to the risk of inmate violence when they failed to protect Gosselin from Clark, transferred Gosselin to SHU, and then transferred Gosselin to NCF-Berlin; and
>    (c) defendants, including Sgts. Messina and Johnson, did not give Gosselin medication on the date he was transferred to NCF-Berlin.

2.    Defendants are liable under 42 U.S.C. § 1983 for retaliating against Gosselin for exercising his First Amendment rights, in that:
>    (a) Clark assaulted Gosselin, and reported the incident to Turner;
>    (b) Turner falsely charged Gosselin with assault and arranged for Gosselin's transfer to SHU;
>    (c) Brown charged Gosselin with fighting and property damage;
>    (d) Brown threatened Gosselin with unspecified consequences if Gosselin refused to plead guilty;
>    (e) Barton found Gosselin guilty of breaking Clark's glasses and ordered restitution;
>    (f) defendants transferred Gosselin to NCF-Berlin and did not grant his requests for immediate reassignment to Medium Custody South; and
>    (g) officers, including Sgts. Messina and Johnson, did not give Gosselin medication on January 26, 2010.

3.    Defendants are liable under 42 U.S.C. § 1983 for violating Gosselin's Fourteenth Amendment right to due process as to the January 19, 2010, disciplinary hearing.

4.    Defendants are liable to Gosselin under state law.

**Discussion**

I.  Ronald Clark (Claims 1(a) and 2(a))

Gosselin asserts that inmate Ronald Clark is liable to him pursuant to 42 U.S.C. § 1983 because, Gosselin asserts, Clark was a prison informant who conspired with Turner to deprive Gosselin of his federal rights.  A private party like Clark can be deemed liable under 42 U.S.C. § 1983 only under limited circumstances, which do not generally apply in this case.  See Yeo v. Town of Lexington, 131 F.3d 241, 253 (1st Cir. 1997) (prison inmates are not state actors); see also Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005) (private party may be liable under section 1983 if "the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]'" (alterations in original) (citation omitted)).

Stripped of legal conclusions, the factual allegations in the complaint (doc. nos. 1, 5, and 7) fail to state a plausible claim of state "insinuat[ion]," Estades-Negroni, 412 F.3d at 5, for the purposes of establishing the joint participation by the state in private misconduct, as to either the assault or the filing of allegedly false charges.  Accordingly, Gosselin's

8

federal claims against Clark should be dismissed (Claims 1(a) and 2(a) above), as Gosselin failed to allege facts showing that Clark acted under color of state law.

## II.  Eighth Amendment

### A.  Endangerment Standard

Gosselin claims that defendants violated his rights by failing to protect him from Clark and by moving him to SHU and NCF-Berlin.  To establish an Eighth Amendment endangerment claim, an inmate must show that he was incarcerated "under conditions posing a substantial risk of serious harm," and that prison officials either intended to punish him through such exposure or were deliberately indifferent to that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  To demonstrate deliberate indifference, a plaintiff must show that a prison official was subjectively aware of a substantial risk of serious harm, or was aware of facts giving rise to an inference that there was a substantial risk of serious harm, and also that the prison official drew that inference when he or she failed to take reasonable measures to abate it.  See id. at 847.

### B.  Inmate Violence (Claim 1(b))

As to the risk of harm presented by Clark and SHU, Gosselin has alleged that Clark outweighed him and was previously

apprehended with a weapon, and that SHU is known to be
dangerous.  Those facts, however, fail to show that prison
officials knew that either Clark or the transfer to SHU would
subject Gosselin to a substantial risk of serious harm, and no
other facts in the complaint show deliberate indifference.
Accordingly, the court should dismiss Gosselin's Eighth
Amendment claim as to the failure to prevent Clark's assault and
the SHU transfer.

As to Gosselin's claim regarding the transfer to NCF-
Berlin, the facts alleged show that Gosselin told prison
officials, including defendants, that unspecified inmates at
NCF-Berlin threatened him in 2003-2004.  The facts alleged in
the complaint, however, fail to show deliberate indifference or
intent to punish, on the part of any defendant as to the January
26, 2010, transfer.

Although Gosselin was assaulted on the day after he arrived
at NCF-Berlin, before he was placed in PC, Gosselin has not
alleged that defendants subjectively knew that threats by
unnamed inmates six or seven years before presented a
substantial risk of harm to Gosselin in 2010, or that security
available to Gosselin at NCF-Berlin would prove inadequate.
Additionally, there are no allegations suggesting that
defendants interfered with, delayed, or otherwise prevented

Gosselin from accessing adequate security or PC housing at NCF-Berlin.  Therefore, the court should dismiss Claim 1(b), the Eighth Amendment endangerment claim, because Gosselin failed to plead facts showing the requisite scienter as to any state actor.

      C.    Medication (Claim 1(c))

In reviewing a medical care claim under the Eighth Amendment, this court must first determine if the prisoner alleged facts sufficient to show that he has not been provided with adequate care for "serious medical needs."  Farmer, 511 U.S. at 835.  Second, the court must determine if the complaint shows that defendants acted with deliberate indifference in failing to provide adequate care to address that need.  See id. An inmate may satisfy the deliberate indifference prong by showing that prison officials denied "needed care as punishment," or made "decisions about medical care . . . recklessly with 'actual knowledge of impending harm, easily preventable.'"  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (citation omitted).

Gosselin alleges that officers who processed his NCF-Berlin transfer did not give him an overdue dose of medication prescribed for his mental health conditions on January 26, 2010. Gosselin has failed to allege facts that show, however, that the

11

delay in providing the medication posed a risk of serious harm to him, or that any defendants intended to punish him by failing to give him his medication or knew that failing to provide the medication would subject Gosselin to a substantial risk of serious harm.  Accordingly, the court should dismiss the medical care claim (Claim 1(c)).

III.  <u>Retaliation</u>

    A.    <u>Elements</u>

To state a claim for retaliation for the exercise of First Amendment rights, an inmate must allege: (1) that the conduct which led to the retaliation was protected by the First Amendment; (2) that he suffered adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken.  <u>See</u> <u>Hannon v. Beard</u>, 645 F.3d 45, 48 (1st Cir. 2011).  <u>De minimis</u> reactions to protected speech are not actionable.  <u>See</u> <u>Morris v. Powell</u>, 449 F.3d 682, 685-86 (5th Cir. 2006).  An adverse act taken in response to protected conduct is not <u>de minimis</u>, however, if it would deter an individual of ordinary firmness from exercising First Amendment rights.  <u>See</u> <u>id.</u>

12

B.   Brown and Turner (Claims 2(b)-(d))

The court assumes, without deciding, that the grievance
process initiated on December 28, 2009, complaining about Turner
and Brown, and Gosselin's refusal to accept Brown's plea
agreement on December 26, 2009, constituted protected speech.
Gosselin asserts that Turner's disciplinary report was a
retaliatory act, and that Brown retaliated against Gosselin when
he added new charges of fighting and damaging property to the
disciplinary report, and when he threated sanctions if Gosselin
did not plead guilty.

Consideration of whether allegedly retaliatory disciplinary
charges are adverse acts requires an assessment of whether the
charges and their disposition would deter an inmate of ordinary
firmness from exercising First Amendment rights.  Here, Brown
dismissed the felonious assault charge less than a day after
Turner brought that charge.  An allegedly false charge, so
quickly dismissed by the investigating officer is a de minimis
act.  See Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009)
("single retaliatory disciplinary charge that is later dismissed
is insufficient to serve as the basis of a § 1983 action");
accord Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009).

Similarly, neither the "damaging property" disciplinary
charge nor Brown's threat of sanctions if Gosselin failed to

13

plead guilty, are more than de minimis acts.  There are no allegations suggesting that any inmate of ordinary firmness would have been deterred by Brown's threat; Gosselin himself has alleged that the threat did not deter him from complaining about Brown's conduct while maintaining his own innocence.

Gosselin further claims a retaliatory motive as to the SHU transfer and the "fighting" charge that Brown added to the disciplinary report.  As to those matters, Gosselin's allegations regarding the causal link between retaliatory intent and the adverse acts alleged are deficient.  The transfer to SHU and the filing of the "fighting" charge occurred before Gosselin filed his complaints against Turner and Brown, and before Gosselin refused to plead guilty, Brown had already filled in a "fighting" charge on the disciplinary report.  The timing of those events does not suggest a causal connection between Gosselin's protected conduct or speech and the SHU transfer and fighting charge.  There are no other facts in the complaint giving rise to a plausible claim of retaliation as to those acts.  Accordingly, Claims 2(b)-(d) should be dismissed.

C.   Hearing, NCF-Berlin, and Medication (Claims 2(e)-(g))

Gosselin claims that the January 19, 2010, guilty finding on the property damage charge, the restitution sanction, and the denial of medication on January 26, 2010, were acts undertaken

14

in retaliation for Gosselin's complaints and grievances,
including those about Turner and Brown.  The hearing and the
transfer both occurred after Gosselin filed complaints about
Turner and Brown, the pending charges, and his transfer to SHU.

As to the transfer to NCF-Berlin, an in-state transfer of
an inmate from one institution to another generally "does not
constitute an adverse action since a transfer is merely an
ordinary incident of prison life."  Jones v. Caruso, 421 F.
App'x 550, 553 (6th Cir. 2011) (citation omitted).  An "alleged
retaliatory transfer ordinarily should be characterized as de
minimis."  Id. (internal quotation marks and citation omitted).
Courts have excepted from this general rule "exceptional cases"
in which "foreseeable, negative consequences 'inextricably
follow' from the transfer," including a case in which the
transfer necessarily involved the "prisoner's loss of his high-
paying job and reduced ability to meet with his lawyer."  Id.
(citation omitted); see also Hannon, 645 F.3d at 49 (transfer
from medium security facility to maximum facility in another
state was adverse action).  Here, both facilities housed medium
security inmates.  The facts alleged in the complaint fail to
show any foreseeable, negative consequences inextricably
following the move to NCF-Berlin.

Moreover, the complaint fails to state a claim because the allegations as to causation are deficient.  The temporal sequence does not show a causal link here, where there are no facts suggesting that officers who directed the transfer were aware Gosselin had filed grievances.  Stripped of legal conclusions about retaliation, the complaint lacks sufficient facts to give rise to a plausible claim of an unconstitutional retaliatory motive for the NCF-Berlin transfer.

Similarly, there are no facts alleged in the complaint, showing that either the hearings officer, or any officers involved in denying Gosselin medication, knew about, or took action because, Gosselin filed complaints and grievances.  Accordingly, the court should dismiss Claims 2(e)-(g).

IV.  Due Process (Claim 3)

Gosselin alleges that his due process rights were violated during the disciplinary process when prison officials:  failed to provide him with twenty-four hours' notice of the hearing, did not review the substance of his appeal of the guilty finding and sanction; and denied him the opportunity to call witnesses. Where a protected liberty interest is at stake, the minimum due process requirements associated with prison disciplinary hearings include "written notice of the charges at least twenty-four hours in advance of the hearing," the ability to call

16

witnesses and present documentary evidence, a hearing before an impartial decision maker, and a written statement as to the evidence relied on and the reasons for the hearings officer's decision.  Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005); see also Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).  "[A]n inmate claiming a violation of procedural due process in a disciplinary hearing must allege that his requests to call witnesses or submit written statements 'were denied for reasons not having to do with institutional security or correctional goals, and that the prison officials' who denied such requests 'clearly abused their considerable discretion in such matters.'" Smith v. Mass. Dep't of Corr., 936 F.2d 1390, 1399 (1st Cir. 1991) (internal quotation marks and citation omitted).

Gosselin has pleaded facts showing that he had a property interest in the funds in his prison account, which the restitution sanction affected.  Assuming, therefore, that Gosselin was entitled to due process at the hearing, see Barber v. Wall, 66 F. App'x 215, 216 (1st Cir. 2003), the court finds that Gosselin has shown that he received all of the process due him.  He admits that he received written notice of the charges weeks before the hearing; he has not pleaded facts showing that the hearing officer was biased; and he has not contended that he was denied either the ability to submit evidence or a written

statement of the hearings officer's decision.  While Gosselin
asserts in a conclusory statement that he was "denied [the]
right to call witnesses," he has failed to identify any
witnesses whom he could not call, and, with one exception – a
witness named Roy Lattanzio - Gosselin has failed to describe
the testimony any uncalled witness would have provided.  As to
Lattanzio, the hearings officer is alleged to have properly
accepted, as uncontroverted, a written offer of proof in lieu of
live testimony.  Cf. Davis v. United States, No. CIV 3CV-04-
2284, 2005 WL 2465852, at *4, n.6 (M.D. Pa. Oct. 6, 2005) (no
deprivation of due process in disciplinary hearing where inmate
submitted uncontested offers of proof as to witness testimony),
appeal dismissed, 182 F. App'x 105 (3d Cir. 2006).  The
complaint thus fails to state a plausible claim that Gosselin
did not receive due process in the disciplinary hearing.[3]
Accordingly, the court should dismiss Claim 3.

V.    Remaining Claims

     The remaining claims in the complaint lack sufficient non-
conclusory factual allegations to give rise to any plausible

---

[3]Furthermore, Barton found Gosselin guilty of the property
damage charge, after finding that Gosselin admitted that he had
broken Clark's glasses.  The hearings officer accepted as
uncontroverted Lattanzio's statement about the incident; the
officer was not required to credit Gosselin's further contention
that he broke the glasses as an act of self-defense.

claim for relief under 42 U.S.C. § 1983.  Such claims should be
dismissed, including all claims asserted against defendants
Lacasse, Fouts, McGrath, Garbac, and the unnamed SHU officers
identified as "Cpl. First Shift" and "OIC Third Shift."

The complaint (doc. nos. 1, 5, and 7) also asserts claims
arising under state law (Claim 4 numbered above).  Upon
accepting this report and recommendation, thereby dismissing all
of the federal claims in this action, the district judge should
decline to exercise supplemental jurisdiction over Gosselin's
state claims.  See 28 U.S.C. § 1367(a) and (c)(3).

### Conclusion

All claims in this action, and all defendants named in the
complaint (doc. nos. 1, 5, and 7), should be dismissed.  The
court should dismiss the federal claims with prejudice for
failure to state a claim, and should dismiss the state law
claims without prejudice, to allow Gosselin to raise those
claims in the state courts.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.
Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st
Cir. 2010) (only issues fairly raised by objections to
magistrate judge's report are subject to review by district
court; issues not preserved by objection are precluded on
appeal).

_____
Landya McCafferty
United States Magistrate Judge

June 7, 2013

cc:  John J. Gosselin, pro se

LBM:nmd